IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| RAYMOND CORNELIUS,<br><br>Plaintiff,<br>v.<br><br>ORACLE AMERICA, INC.,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER GRANTING IN PART [34] DEFENDANT'S MOTION TO DISMISS<br><br>Case No. 2:24-cv-00850-CMR<br><br>Chief Magistrate Judge Cecilia M. Romero |

All parties in this case have consented to the undersigned conducting all proceedings, including entry of final judgment (ECF 11). *See* 28 U.S.C. § 636(c); *see also* Fed. R. Civ. P. 73. Before the court is Defendant Oracle America, Inc.'s (Defendant) Motion to Dismiss (Motion) (ECF 34). The court also considered Plaintiff Raymond Cornelius' (Plaintiff) Response (ECF 38) and Defendant's Reply (ECF 40). Having carefully considered the relevant filings, the court finds that oral argument is not necessary and decides this matter on the written memoranda. *See* DUCivR 7-1(g). For the reasons set forth below, the court GRANTS IN PART the Motion.

## I. BACKGROUND

### A. Procedural Background

In September 2024, Plaintiff filed multiple complaints against Defendant in state court (ECF 1-2). On October 7, 2024, the state district court consolidated the cases, finding they were "inextricably intertwined in that the matters turn on the same set of related facts and implicate common questions of fact and law" (*id.* at 1535). Following consolidation, Plaintiff filed an amended pleading in the consolidated action, which the court refers to as the Complaint (ECF 1-1). The Complaint asserted four claims against Defendant: (1) breach of contract arising from the disruption of electronic devices and employee monitoring; (2) breach of contract based on unpaid

wages and overtime; (3) breach of contract based on discrimination, fraud, harassment, and retaliation; and (4) wrongful termination (Compl. at 2–6).

On November 12, 2024, Defendant removed the consolidated action to federal court (ECF 1) and moved to dismiss the Complaint (ECF 5). On July 30, 2025, the court issued a Memorandum Decision and Order (Order) granting Defendant's motion, concluding that Plaintiff had failed to sufficiently plead any of his four claims, but granting Plaintiff leave to amend (ECF 23). Plaintiff filed the operative Amended Complaint on August 13, 2025 (ECF 24 or Am. Compl.).[1] The Amended Complaint spans 169 pages and includes an additional 4,706 pages of exhibits (*id.*).

**B. Factual Background**

Plaintiff alleges that Defendant hired him in July 2015 and terminated his employment on May 9, 2023 (*id.* at 3 ¶¶ 5–8).[2] On March 27, 2023, Plaintiff allegedly filed "complaints" with Defendant's human resources department concerning "discrimination, fraud, harassment and non-sexual quid pro quo harassment, a hostile and unsafe work environment, retaliation, stalking, unlawful monitoring and observation, unpaid wages, including shift differentials, and unpaid overtime" (*id.* ¶ 7). Plaintiff alleges that Defendant subsequently terminated him "due to alleged deficient performance" (*id.* ¶ 8).

The Amended Complaint is divided into four sections that Plaintiff labels "Complaints": (1) "Breaches of Contract—Disruptions to Electronic Devices, Fraud, and Unlawful Employee Monitoring" (Am. Compl. at 5); (2) "Breaches of Contract—Fraud, Unpaid Wages, and Unpaid Overtime" (*id.* at 20); (3) "Breaches of Contract—Discrimination, Fraud, Harassment, and Retaliation" (*id.* at 36); and (4) "Wrongful Termination" (*id.* at 94). Although the precise nature

[1] Although the operative pleading is technically Plaintiff's second Amended Complaint since the commencement of the state case, the court refers to it as the Amended Complaint, consistent with the docket in this case (ECF 24)
[2] Due to the organization of the Amended Complaint, and for the sake of clarity, when citing the Amended Complaint, the court references the page number as well as the respective paragraph number when applicable.

and organization of Plaintiff's allegations are difficult to discern, the court construes and refers to these four "Complaints" as four Claims.

Under each Claim, Plaintiff invokes an assortment of federal and state authorities (Am. Compl. at 5, 20, 36, 94). The federal authorities include 28 U.S.C. § 1332; Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. §§ 2000e–2000e-17; the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. §§ 621–634; the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201–209; the Electronic Communications Privacy Act of 1986 (ECPA), 18 U.S.C. §§ 2510–2522, 2701–2710, and 3121–3126; the Occupational Safety and Health Act of 1970 (OSHA), 29 U.S.C. §§ 651–678; and 18 U.S.C. § 2261A (Am. Compl. at 5, 20, 36, 94). Plaintiff also invokes the Utah Anti-Discrimination Act (UAA), Utah Code Ann. § 34A-5-101, *et seq*.; the Utah Payment of Wages Act (UPWA), Utah Code Ann. § 34-28-1, *et seq.*; Utah Administrative Code R610-3; Utah Code § 76-5-106.5, and Utah Code § 76-9-201 (Am. Compl. at 5, 20, 36, 94).

On September 10, 2025, Defendant filed the present Motion to Dismiss, seeking dismissal of all four Claims asserted in the Amended Complaint (ECF 34).

## II. LEGAL STANDARD

In undertaking the below analysis, the court is mindful that Plaintiff is acting *pro se* and that his filings are liberally construed and held "to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Still, a *pro se* plaintiff must "follow the same rules of procedure that govern other litigants." *Garrett v. Selby, Connor, Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quoting *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994)). The court "will [also] not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1175 (10th Cir. 1997).

## III. DISCUSSION

Defendant argues that the Amended Complaint should be dismissed for failing to comply with Rules 8 and 9 of the Federal Rules of Civil Procedure, and alternatively, that each of Plaintiff's four Claims fails to state a claim under Rule 12(b)(6) (ECF 34).

### A. The Amended Complaint Fails to Comply with Rule 8.

Defendant asserts that Plaintiff's Amended Complaint fails to comply with the pleading requirements of Rule 8 and therefore should be dismissed (*id.* at 5–7).

Rule 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," while Rule 8(d)(1) requires that "[e]ach allegation . . . be simple, concise, and direct." Fed. R. Civ. P. 8(a)(2), (d)(1). The purpose of these requirements is "to give opposing parties fair notice of the basis of the claim against them so that they may respond to the complaint, and to apprise the court of sufficient allegations to allow it to conclude, if the allegations are proved, that the claimant has a legal right to relief." *Monument Builders of Greater Kansas City, Inc. v. Am. Cemetery Assn. of Kansas*, 891 F.2d 1473, 1480 (10th Cir. 1989) (quoting *Perington Wholesale, Inc. v. Burger King Corp.*, 631 F.2d 1369, 1371 (10th Cir. 1979)). As the Tenth Circuit has explained, "Rule 8 serves the important purpose of requiring plaintiffs to state their claims intelligibly so as to inform the defendants of the legal claims being asserted." *Mann v. Boatright*, 477 F.3d 1140, 1148 (10th Cir. 2007).

Unnecessary length and irrelevant detail defeat, rather than advance, these purposes. *See Baker v. City of Loveland*, 686 Fed. App'x 619, 620 (10th Cir. 2017) ("Prolixity of a complaint undermines the utility of the complaint." (quoting *Knox v. First Sec. Bank of Utah*, 196 F.2d 112, 117 (10th Cir. 1952))). This is because the purpose of Rule 8 is "to eliminate prolixity in pleading and to achieve brevity, simplicity, and clarity." *Knox*, 196 F.2d at 117. Accordingly, a complaint

may violate Rule 8 through "unnecessary length and burying of material allegations in 'a morass of irrelevancies.'" *Baker v. City of Loveland*, 686 F. App'x 619, 620 (10th Cir. 2017) (quoting *Mann*, 477 F.3d at 1148). In *Mann*, the Tenth Circuit concluded that, "[i]n its sheer length, [the plaintiff] ha[d] made her complaint unintelligible 'by scattering and concealing in a morass of irrelevancies the few allegations that matter.'" 477 F.3d at 1148 (quoting *Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003)).

Defendant argues that the Amended Complaint violates Rule 8 because, despite asserting only four Claims, it spans 169 pages with an additional 4,706 pages of exhibits and consists largely of rambling, repetitive, and incoherent allegations (*see* ECF 34 at 5). According to Defendant, the pleading's length and organization obscure any connection between Plaintiff's allegations, his four Claims, and his request for $112 billion in damages, thereby depriving Defendant of fair notice of the claims against it (*id.*). Defendant therefore contends that neither it nor the court should be required to piece together cognizable claims from the Amended Complaint (*id.*).

Plaintiff responds that the Amended Complaint is not unduly lengthy because this action originated as multiple separate complaints that were later consolidated into a single case and that the Amended Complaint does give Defendant fair notice (*see* ECF 38 at 2). Although the court is mindful of this lengthy and complex procedural history, the concern is not merely the Amended Complaint's page count. Rather, it is the repetition and inclusion of irrelevant material that obscure the allegations underlying Plaintiff's claims by "scattering and concealing in a morass of irrelevancies the few allegations that matter." *Mann*, 477 F.3d at 1148 (quoting *Garst*, 328 F.3d at 378). The court, therefore, agrees that the Amended Complaint fails to comply with Rule 8.

When a complaint fails to comply with Rule 8, dismissal without prejudice is appropriate. *See Dees v. Hood*, No. 24-CV-00848-PAB-NRN, 2025 WL 2416449, at *4 (D. Colo. Aug. 21,

2025) (affirming dismissal of an action without prejudice due to failure to comply with Rule 8). Here, however, the court declines to dismiss the Amended Complaint for failure to comply with Rule 8. Given that this is Plaintiff's Amended Complaint, the court will instead consider whether each of Plaintiff's four Claims states a claim for relief under Rules 9 and 12(b)(6).

**B. The Amended Complaint Fails to Sufficiently Allege a Fraud Claim.**

Defendant argues that, to the extent Plaintiff attempts to assert fraud as part of any of his four Claims, his allegations fail to satisfy Rule 9(b)'s heightened pleading requirements (ECF 34 at 7–8).

The court addressed the same deficiency in its prior Order, observing that "Plaintiff references 'fraud' in the [Complaint], but it is unclear how these references tie into any of his asserted claims" (ECF 23 at 6). The court explained that Rule 9(b) requires a plaintiff "to identify the time, place, and content of each allegedly fraudulent representation or omission, to identify the particular defendant responsible for it, and to identify the consequence thereof" (*id*. at 6–7 (quoting *Gaddy v. Corp. of President of Church of Jesus Christ of Latter-Day Saints,* 551 F. Supp. 3d 1206, 1217 n.85 (D. Utah 2021))). Because the Complaint "lack[ed] any specificity with regard to such information," the court concluded that, "to the extent Plaintiff is asserting any claims for fraud, such claims are dismissed for failure to comply with pleading standards" (*id*.).

The Amended Complaint now identifies sixty purported "Fraud Incidents" dispersed throughout Plaintiff's four Claims.[3] In an apparent effort to remedy the deficiency identified in the court's prior Order, Plaintiff provides information concerning each incident, including the employee who allegedly made the fraudulent representation and sections labeled "Date(s)," "Content," and "Outcome" (*see e.g.*, Am. Compl. at 13–19).

---

[3] Fraud Incidents 1 through 4 are brought under Claim 1; Incidents 5 through 8 under Claim 2; Incidents 9 through 24 under Claim 3; and Incidents 25 through 60 under Claim 4 (*see generally* Am. Compl.).

Defendant acknowledges Plaintiff's attempt to provide additional detail but argues that the new allegations still fail to satisfy Rule 9(b) (ECF 34 at 7–8). Defendant contends that Plaintiff does not identify when the alleged fraud occurred with sufficient specificity because many of the identified periods span several years, including "[b]etween August 17, 2015 and May 10, 2023" and "[b]etween July 1, 2020 and January 31, 2022" (*id*. (citing Am. Compl. at 15 ¶ f.ii, 17 ¶ f.iii)). Defendant further argues that Plaintiff's repetitive and convoluted descriptions fail to identify the specific representations made or explain how those representations harmed Plaintiff, thereby failing to provide Defendant notice of the nature of any fraud claim asserted against it (*id*. at 8).

To this point, Plaintiff responds by conclusively asserting that his fraud claims do not violate Rule 9, and that his sixty incidents of fraud are "complex and may appear 'convoluted' because of [their] ongoing and systemic nature" (ECF 38 at 3). Plaintiff also asserts that his incidents of fraud "are further described in [his] Affidavit" (*id*.).

The court recognizes Plaintiff's effort to provide the information required by Rule 9(b), including "the time, place, and content of each allegedly fraudulent representation or omission," the individual responsible, and the resulting consequence. *Gaddy*, 551 F. Supp. 3d at 1217 n.85 (quoting *Hafen*, 338 F. Supp. 2d at 1263). Merely organizing the allegations under headings identifying an employee, "Date(s)," "Content," and "Outcome," however, does not establish that the allegations themselves contain the required specificity.

The court agrees with Defendant that Plaintiff's sixty alleged Fraud Incidents do not satisfy Rule 9(b). First, the incidents span several years. Second, the alleged "Content" of the fraud consists of repetitive conclusory allegations which do little to advance any specific allegation of fraud. Such broad periods of time, in conjunction with Plaintiff's broad and generic descriptions of the purported "Content" and "Outcome" do not meet the heightened pleading requirement of

Rule 9.[4] Plaintiff himself appears to concede that he has alleged his fraud claims "generally," but this was "because the false material facts and misrepresentations were withheld from Plaintiff" by certain employees (ECF 38 at 7). This general and conclusory statement, without more, does not save Plaintiff's sixty incidents of fraud. Finding otherwise would undermine Rule 9's heightened pleading requirements.

The court's prior Order expressly advised Plaintiff of these pleading requirements and afforded him an opportunity to cure the deficiencies (ECF 23 at 6–7). Despite that opportunity with clear instructions on what was required, the Amended Complaint still does not plead fraud with the particularity required by Rule 9(b). While the mandate of leave to amend being "freely given when justice so requires" must be heeded, s*ee Foman v. Davis*, 371 U.S. 178, 182 (1962), Plaintiff has already been afforded an opportunity to amend, and his expanded allegations have not cured the identified deficiencies. The court, therefore, declines to grant further leave to amend. *See Foman*, 371 U.S. at 182 (recognizing "repeated failure to cure deficiencies by amendments previously allowed" as a basis for denying leave to amend).

Accordingly, to the extent Plaintiff asserts fraud as an independent claim or theory of liability within any of his four Claims, those fraud claims are dismissed with prejudice. *See Cook v. Zions First Nat. Bank*, 645 F. Supp. 423, 425 (D. Utah 1986) ("Based on the plaintiffs' continued failure to comply with Rule 9(b), the court believes that plaintiffs' second cause of action should be dismissed with prejudice.").

[4] Plaintiff's reference to his Affidavit also does not cure his pleading deficiencies. His Affidavit (Am. Compl. Ex. 1 or ECF 24-1) consists of 299 pages of alleged additional allegations (*see generally id.*). Simply stating that his incidents of fraud are further described in his 299-page Affidavit does not provide additional insight as to how his purported allegations meet the heightened requirements of Rule 9(b). More importantly, as Defendant states in his Reply, these alleged additional allegations are "incoherent" (ECF 40 at 6), and the court agrees. Like the Amended Complaint, the 299-page Affidavit contains repetitive and conclusory allegations which obscure any relevant allegations. Even when there are allegations which seem to be informative, the court cannot discern which of the sixty alleged incidents of fraud the Affidavit appears to support. For these reasons, the court does not find that the additional allegations contained in Plaintiff's Affidavit cure the pleading deficiencies of Plaintiff's sixty incidents of fraud.

**C. Plaintiff's Remaining Claims are Insufficiently Pled under Rule 12(b)(6).**

Additionally, Defendant seeks dismissal under Rule 12(b)(6) for failure to state a claim upon which relief can be granted (ECF 5 at 3–4). The court agrees that Plaintiff's Amended Complaint fails to satisfy the pleading requirements of Rule 12(b)(6).

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). In this review, a court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] the allegations in the light most favorable to the non-moving party." *Wilson v. Montano*, 715 F.3d 847, 852 (10th Cir. 2013).

1. Breach of Contract Claims

Plaintiff labels Claims 1 through 3 as "Breaches of Contract" (Am. Compl. at 5, 20, 36, 94). The court advised Plaintiff of the requirements of a breach-of-contract claim in its prior Order (ECF 23 at 7–8). Under Utah law, a plaintiff must establish "(1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages." *Daz Mgmt., LLC v. Honnen Equip. Co.*, 508 P.3d 84, 91 n.26 (Utah 2022) (quoting *Richards v. Cook*, 314 P.3d 1040, 1043 (Utah Ct. App. 2013)).[5] At a minimum, the complaint must allege when the parties

[5] "A federal court exercising supplemental jurisdiction over state-law claims 'applies the substantive law, including choice of law rules, of the forum state.'" *Nunes v. Rushton*, 299 F. Supp. 3d 1216, 1224 (D. Utah 2018) (quoting *BancOklahoma Mortg. Corp. v. Capital Title Co.*, 194 F.3d 1089, 1103 (10th Cir. 1999)). Because the relevant events underlying Plaintiff's claims occurred in Utah, and the parties seemingly agree that Utah law applies to Plaintiff's state law claims, the court applies Utah's substantive law to Plaintiff's claims for breach of contract.

entered the contract, its essential terms, and the nature of the alleged breach. *Am. W. Bank Members, L.C. v. State*, 342 P.3d 224, 231 (Utah 2014). Because Plaintiff's prior Complaint did not identify a specific contract or allege when it was formed, its essential terms, or how Defendant breached those terms, the court concluded that Plaintiff's first three claims were insufficiently pled to the extent they asserted breach of contract (ECF 23 at 8).

In an attempt to cure these deficiencies, Plaintiff identifies the subject contract as "an employment contract" made "on August 17, 2015" (Am. Compl. at 3 ¶ 9). Plaintiff also states that the employment contract is attached as Exhibit A (Am. Compl. ¶ 11).[6] Additionally, Plaintiff appears to provide the following "essential terms" of said contract:

> Plaintiff agreed to employment as a non-exempt employee at Defendant's Lehi, UT field office as an E-Business Suite (EBS) Process Manufacturing (OPM) Technical Support Analyst (IC1), and Plaintiff agreed to be compensated bi-monthly at a pay rate of $21.63 per hour including employee benefits; Defendant agreed to employ Plaintiff as a non-exempt employee at Oracle's Lehi, Utah field office as an E-Business Suite (EBS) Process Manufacturing (OPM) Technical Support Analyst (IC1), and Defendant agreed to compensate Plaintiff bi-monthly at a pay rate of $21.63 per hour including employee benefits.

(Am. Compl. ¶ 11).

Although these allegations provide additional information about the parties' employment relationship, they do not identify any contractual term governing the conduct underlying the alleged breaches of contract asserted in Claims 1 through 3. Instead of identifying the essential

---

[6] As indicated by Defendant, "Exhibit A" filed by Plaintiff is an email regarding the acceptance of his application for employment, not an employment contract. Defendant presumed that Plaintiff was referring to the "Employment Agreement & Mutual Agreement to Arbitrate" that Plaintiff allegedly electronically acknowledged on July 17, 2015 (*see* ECF 34-1). That said, the court conducts this analysis without considering the Employment Agreement & Mutual Agreement to Arbitrate, as it is unclear whether its authenticity is undisputed and exactly to what Plaintiff refers. *See Burke v. Holdman*, 750 Fed. App'x 616, 620 (10th Cir. 2018) ("[I]f a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." (quoting *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997))).

terms, Plaintiff specifically alleges that Defendant failed to comply with the employment contract due to the following:

> Defendant disrupted electronic devices in Plaintiff's possession, committed fraud against Plaintiff, and unlawfully monitored, observed, and surveilled Plaintiff by intentionally intercepting Plaintiff's oral and electronic communications and using pen registers, location tracking, and trap/trace devices against Plaintiff;
>
> Defendant failed to pay Plaintiff unpaid wages, including shift differentials, and unpaid overtime, and Defendant committed fraud against Plaintiff by withholding information about unpaid wages and unpaid overtime owed, and by stating that Plaintiff was not owed unpaid wages and unpaid overtime after Plaintiff notified Defendant about unpaid wages and unpaid overtime and after an internal investigation was completed;
>
> Defendant discriminated and retaliated against Plaintiff, including reverse age discrimination in that Plaintiff was younger than 40 years of age, harassed and non-sexual quid pro quo harassed Plaintiff, created a hostile and unsafe work environment, and committed fraud against Plaintiff; and
>
> Defendant wrongfully terminated Plaintiff and committed fraud against Plaintiff by creating an unsafe and hostile work environment, by defaming Plaintiff, by falsifying records and manipulating data to target Plaintiff, and by terminating Plaintiff after attempting to constructively discharge Plaintiff.

(Am. Compl. at 4 ¶ 12(a)–(d.)).[7] These allegations identify conduct that Plaintiff believes was wrongful, but they do not connect that conduct to any obligation imposed by the alleged employment contract.

Plaintiff does not identify any contractual language prohibiting Defendant from monitoring electronic devices or communications, governing discrimination or workplace conditions, restricting Defendant's ability to terminate his employment, or otherwise imposing the duties allegedly breached. Although Plaintiff identifies an agreed hourly rate, he does not identify a contractual term entitling him to shift differentials or overtime compensation or allege that

[7] In his Reply, Plaintiff concedes that he "did not allege specific provisions of the employment contract and Defendant's Company policies that were breached" (ECF 38 at 5). He argues that he is asserting "conduct that constituted breach of contract and company policies" (*id.*).

Defendant paid him less than the agreed rate for particular work. And although Plaintiff refers generally to Exhibit A, he does not identify any provision within that exhibit creating the contractual obligations on which these theories depend.

For the above reasons, the court finds that Plaintiff has not stated a plausible breach-of-contract claim. Although Plaintiff has already been afforded an opportunity to amend, and has not cured the identified deficiencies, it appears that he is now in possession of the contract at issue. Accordingly, to the extent that Claims 1, 2, and 3 assert breaches of contract, such claims are dismissed without prejudice.

2. <u>Claim of Disruptions to Electronic Devices and Unlawful Employee Monitoring (Claim 1)</u>

Claim 1 appears to assert a claim for disruptions to electronic devices and unlawful employee monitoring (*see* Am. Compl. at 5).[8] At the outset of Claim 1, Plaintiff alleges as follows:

> Defendant's internal IT department unlawfully monitored, observed, and surveilled Plaintiff by intentionally intercepting Plaintiff's oral, video, and electronic communications and by using pen registers, location tracking, remote access, and trap/trace devices against Plaintiff while he used devices and equipment provided by Defendant, like laptops, docking stations, monitors, and other peripherals, and while he used personal devices, like cellular phones, for no legitimate business purposes, to discriminate and retaliate against Plaintiff, to and harass and non-sexual quid pro quo harass Plaintiff, and to stalk Plaintiff due to reverse age discrimination, in that Plaintiff was younger than 40 years of age, race, color, sex, and national origin.

(Am. Compl. ¶ 15). Because Plaintiff invokes numerous federal and state statutes at the beginning of Claim 1, the precise legal theories underlying this claim are difficult to discern.

For example, Plaintiff cites to the following provisions of the ECPA: 18 U.S.C. §§ 2510–2522, 2701–2710, and 3121–3126 (Am. Compl. at 5 ¶ 14(d)). The provisions Plaintiff cites appear to encompass the following three statutory schemes or Acts: The Wiretap Act (18 U.S.C. § 2510);

---

[8] Claim 1 also asserts breach of contract and fraud, which the court has already addressed above. *See supra* Part III(B) (Fraud Claims), and Part III(B)(c)(1) (Breaches of Contract Claims).

The Stored Communications Act (18 U.S.C. §§ 2701–2713); and the Pen Register and Trap and Trace Devices Act (18 U.S.C. §§ 3121–3127) (*see* Am. Compl. at 5 ¶ 14(d)). Although Plaintiff cites the above statutory schemes, the allegations that follow provide no guidance on how the allegations relate to each statutory scheme.

Liberally construed, Plaintiff alleges that Defendant disrupted or intercepted his access to accounts, applications, internal networks, and test instances; intentionally intercepted his email communications and attached files; intercepted files transferred to or stored on devices provided by Defendant; and prematurely revoked his access to his accounts and Defendant's internal networks (Am. Compl. ¶ 15(b)–(e)). Plaintiff further alleges that Defendant engaged in this conduct for no legitimate business purpose (*id.*).

Defendant argues that these allegations merely recite statutory terminology and are insufficient to state a plausible claim under the ECPA (*see* ECF 34 at 17–18). Defendant's argument, however, addresses only the requirements for an unlawful interception claim under the Wiretap Act (*id.*). Defendant does not separately analyze whether Plaintiff has stated a claim under the Stored Communications Act or the Pen Register Act, both of which Plaintiff also cites in the Amended Complaint.

Nevertheless, Plaintiff's citation to these statutes in connection with the broad conclusory allegations is insufficient to state a claim under any of the statutory schemes. The Amended Complaint repeatedly alleges that Defendant "intercepted" communications, "disrupted" access, and used "pen registers," "location tracking," and "trap/trace devices," but Plaintiff's repeated use of statutory terminology does not transform these unsupported conclusions into well-pled factual allegations.

Although the court accepts well-pleaded factual allegations as true and views them in the light most favorable to Plaintiff, it need not accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. Likewise, "a legal conclusion couched as a factual allegation" is not entitled to the presumption of truth. *Twombly*, 550 U.S. at 555 (citation omitted). This principle applies equally to a litigant proceeding *pro se*: "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Hall*, 935 F.2d at 1110; *see also Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214–15 (10th Cir. 2011).

Liberal construction permits the court to discern claims reasonably supported by Plaintiff's factual allegations; it does not permit the court to supply missing facts, select among numerous statutory provisions, or construct a legal theory on Plaintiff's behalf. *Whitney*, 113 F.3d at 1175. Accordingly, the court will not attempt to match Plaintiff's conclusory and repetitive allegations to potential claims under the various statutory provisions he cites. Therefore, to the extent that the Amended Complaint asserts claims under the Wiretap Act, the Stored Communications Act, or the Pen Register Act, such claims are inadequately pled and dismissed without prejudice.

3. Claim for Unpaid Wages and Unpaid Overtime (Claim 2)

Plaintiff labels Claim 2 "Breaches of Contract—Fraud, Unpaid Wages, and Unpaid Overtime" (Am. Compl. at 20). Plaintiff alleges that Defendant failed to pay wages, shift differentials, and overtime owed for work he performed between August 17, 2015, and May 10, 2023 (Am. Compl. at 22 ¶¶ 20–22).[9] He estimates that Defendant owes him $532,008.65 and alleges that he previously filed a complaint with the United States Department of Labor's Wage

[9] Claim 2 also asserts breach of contract and fraud, which the court has already addressed above. *See supra* Part III(B) (Fraud Claims), and Part III(B)(c)(1) (Breaches of Contract Claims).

and Hour Division, which issued a "turndown notice" attached to the Amended Complaint as Exhibit B (*id.*).

In support of Claim 2, Plaintiff alleges that Defendant refused to pay the wages and overtime owed to him, withheld information concerning that compensation, and willfully allowed the unpaid amounts to accumulate throughout his employment (*id.* at 23 ¶ 24). Plaintiff further alleges that Defendant reduced his job responsibilities, changed his schedule to eliminate shift differentials, reduced and ultimately eliminated weekend support to limit his overtime, and reassigned his responsibilities and schedule to senior employees (*id.*). According to Plaintiff, Defendant took these actions to discriminate and retaliate against him based on his age, race, color, sex, and national origin, to harass him, and to force him to resign (*id.*). Although Plaintiff characterizes Claim 2 as one for breach of contract, he also expressly alleges that Defendant's failure to pay wages and overtime violated the FLSA (*id.*).

*i. FLSA Statute of Limitations*

Defendant renews its argument that Plaintiff's FLSA claims are barred, at least in part, by the applicable statute of limitations (ECF 34 at 13–14). As the court explained in its prior Order, an FLSA claim is subject to a two-year limitations period unless the alleged violation was willful, in which case a three-year period applies (ECF 23 at 8 (citing 29 U.S.C. § 255(a))). An FLSA claim accrues "when the employer fails to pay the required compensation for any workweek at the regular pay day for the period in which the workweek ends." *Scholzen v. Scholzen Prods. Co.*, No. 4:20-cv-00019-DN-PK, 2020 WL 7630801, at *5 (D. Utah Dec. 22, 2020) (quoting 29 C.F.R. § 790.21(b)). Accordingly, "[e]ach failure to pay overtime begins a new statute of limitations period as to that particular event." *Id.* (quoting *Knight v. Columbus, Ga.*, 19 F.3d 579, 582 (11th Cir. 1994)).

Plaintiff alleges that Defendant failed to pay wages and overtime throughout the period from August 17, 2015, through May 10, 2023, and characterizes the violations as willful (Am. Compl. at 22–23 ¶¶ 20–24). Plaintiff asserts that he filed his original complaints in state court on September 17, 2024 (ECF 24 at 93).[10] Applying the longer three-year limitations period and using September 17, 2024, as the date Plaintiff filed his original complaints (*id*. at 93 ¶ 34(l)), any claim based on compensation due before September 17, 2021, is untimely. Thus, as the court previously concluded, a substantial portion of the unpaid wages and overtime Plaintiff seeks is barred by the statute of limitations (ECF 23 at 8–9). However, Plaintiff's FLSA claims falling within the applicable limitations are not barred, and Defendant provides no argument as to why claims falling within the applicable time limitations fail.[11]

Claim 2 is therefore dismissed with prejudice to the extent it seeks recovery for pay periods falling outside the applicable limitations period. Plaintiff's FLSA claims which are not barred by the applicable limitations period, i.e., September 17, 2021, through May 10, 2023, are not dismissed.

4. Claim of Discrimination, Harassment, and Retaliation (Claim 3)

As noted above, Plaintiff labels Claim 3 "Breaches of Contract—Discrimination, Fraud, Harassment, and Retaliation" (Am. Compl. at 36 ¶ 27).[12] Plaintiff appears to be asserting this claim under Title VII and ADEA (*id.*). Plaintiff identifies the allegedly discriminatory conduct as the

---

[10] Although Defendant assert Plaintiff's claims were not filed in state court until September 25, 2024 (ECF 34 at 2 n.1), for purposes of this Motion, the court accepts Plaintiff's allegation that he filed his original complaints in state court on September 17, 2024.

[11] Defendant argues that "Plaintiff's FLSA claims are untimely to the extent they are based on unpaid wages that should have been paid before September 17, 2021" (ECF 34 at 13–14). However, Defendant does not address the claims spanning September 17, 2021, through May 10, 2023. Rather, Defendant appears to request that the court dismiss all of Plaintiff's FLSA claims because a portion of them are time-barred (*id.*). Defendant provides no case law or authority that authorizes the dismissal of all FLSA claims because some of the claims asserted are time-barred.

[12] To the extent that Claim 3 asserts breach of contract and fraud, these claims have already been addressed by the court. *See supra* Part III(B) (Fraud Claims), and Part III(B)(c)(1) (Breaches of Contract Claims).

termination of his employment, failure to promote, unequal terms and conditions of employment, retaliation, failure to provide a raise, failure to pay wages and overtime, fraud, harassment, a hostile and unsafe work environment, unlawful employee monitoring, and stalking (*id*. at 37 ¶ 28).

Plaintiff alleges that he filed a charge concerning Defendant's discriminatory conduct with the Equal Employment Opportunity Commission (EEOC) on March 4, 2024, and received a Notice of Right to Sue on June 13, 2024 (*id*. at 92 ¶ 33). Plaintiff alleges that he attempted to file his complaints on September 12, 2024, and September 13, 2024, but that he "submitted his documents to the correct court on September 17, 2024" (*id*. at 92–93 ¶ 34). Plaintiff acknowledges that the ninety-day period for filing suit expired on September 11, 2024, but alleges that he intended to file his claims within that period and filed them as soon as reasonably possible (*id*. at 92–94, ¶ 34). Plaintiff further alleges that he has been indigent since his termination in May 2023 (*id*.). Based on those circumstances, Plaintiff invokes equitable tolling and asks the court to treat Claim 3 as timely under Title VII and the ADEA (*id*.).

*i. Timeliness of Plaintiff's Title VII and ADEA Claims*

Defendant argues that Plaintiff's claims under Title VII and the ADEA are untimely (ECF 34 at 14). The court addressed this same argument in its prior Order (ECF 23 at 9–11). At that time, however, the Complaint did not allege when Plaintiff received the EEOC's right-to-sue notice or facts supporting equitable tolling (*id*.). The court therefore did not resolve the timeliness issue but advised Plaintiff that the dates he received the notice and filed suit, as well as any facts supporting equitable tolling, were relevant to his Title VII and ADEA claims (*id*. at 11). Plaintiff now includes those facts in the Amended Complaint, and the same timeliness analysis therefore applies.

"Under both Title VII and the ADEA, a plaintiff must file a complaint within 90 days of having received a right-to-sue letter." *Malik v. 7/Eleven Store No. 27875*, 74 F. App'x 887, 889 (10th Cir. 2003). This deadline operates as a statute of limitations and is subject to waiver, estoppel, and equitable tolling. *Calvert v. Roadway Exp., Inc.*, 32 F. App'x 510, 512 (10th Cir. 2002). Although timeliness is an affirmative defense, dismissal under Rule 12(b)(6) is appropriate when the complaint's allegations establish that the claim is time-barred. *Chance v. Zinke*, 898 F.3d 1025, 1034 (10th Cir. 2018). The Tenth Circuit narrowly construes equitable tolling, applying it when a plaintiff was actively misled or "has in some extraordinary way been prevented from asserting his or her rights." *Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002) (citation omitted); *see also Biester v. Midwest Health Servs., Inc.*, 77 F.3d 1264, 1267–68 (10th Cir. 1996).

Plaintiff alleges that he received the EEOC's right-to-sue notice on June 13, 2024, and expressly acknowledges that the ninety-day filing period expired on September 11, 2024 (Am. Compl. at 92 ¶ 34). Plaintiff further acknowledges that he did not timely file his claims and instead asks the court to equitably toll the deadline because he initially attempted to file in the wrong venue and has been indigent since his termination (*id.*). Plaintiff's allegations, however, do not support equitable tolling.

First, Plaintiff's attempt to file in the wrong venue cannot explain his failure to act within the statutory period because, by his own account, he did not begin attempting to file until September 12, 2024, after the deadline had already expired (*id.*). Second, Plaintiff's indigence, without additional allegations showing that it prevented him from filing, does not constitute the type of extraordinary circumstance required for equitable tolling. Third, Plaintiff does not allege that Defendant or the EEOC actively misled him about the deadline or that some extraordinary circumstance prevented him from timely asserting his rights. His stated intent to file within the

ninety-day period and his assertion that he filed as soon as reasonably possible does not alter the result.

Because the Amended Complaint establishes that Plaintiff filed suit after the ninety-day deadline and does not plausibly allege a basis for waiver, estoppel, or equitable tolling, his Title VII and ADEA claims are untimely. Plaintiff was previously advised of this deficiency and afforded an opportunity to plead any facts supporting timeliness or tolling, but his amended allegations do not cure the defect. Accordingly, Plaintiff's Title VII and ADEA claims are dismissed with prejudice.

5. Wrongful Termination (Claim 4)

Claim 4 asserts a wrongful termination claim. In support, Plaintiff alleges that Defendant discriminated, harassed, and retaliated against him based on his age, race, color, sex, and national origin, and that Defendant terminated him because of the complaints he made to HR on March 27, 2023 (Am. Compl. at 94–95 ¶¶ 38–40). Although Plaintiff labels this claim as "wrongful termination," its allegations rest on the same theories of discrimination and retaliation asserted under Title VII and the ADEA in Claim 3. Thus, Plaintiff's wrongful termination claim is likewise untimely, as he did not file his claims within the ninety-day period and he has not alleged facts warranting equitable tolling. Accordingly, Plaintiff's wrongful termination claim under Title VII and the ADEA is dismissed with prejudice.

6. Plaintiff's Remaining Claims Under Various State and Federal Statutes

Throughout the Amended Complaint, Plaintiff also cites to the following state statutes: the UAA; UPWA; Utah's criminal stalking and electronic-communication-harassment statutes, Utah Code Ann. §§ 76-5-106.5 and 76-9-201; and Utah Admin Code R610-3 (*see* Am. Compl. at 5, 20, 36, 94). He also cites to the following federal statutes: 18 U.S.C. § 2261A (a federal criminal

stalking statute); and OSHA (*id.*). Defendant argues that the Amended Complaint does not identify what claims Plaintiff intends to assert under these statutes or connect the statutes to supporting factual allegations (ECF 34 at 19). The court agrees.

As articulated by the court when addressing Plaintiff's claims under Claim 1, liberal construction permits the court to discern claims reasonably supported by Plaintiff's factual allegations, but it does not permit the court to construct a legal theory on Plaintiff's behalf. *Whitney*, 113 F.3d at 1175. Accordingly, the court will not attempt to match Plaintiff's conclusory and repetitive allegations to potential claims under the various statutory provisions he cites. Accordingly, to the extent that Plaintiff asserts claims under the above-referenced state and federal statutes, they are dismissed without prejudice for failure to state a claim.[13]

## IV. ORDER

For the reasons stated above, the court GRANTS IN PART Defendant's Motion to Dismiss (ECF 34) and hereby ORDERS as follows:

1. The various incidents of fraud alleged through the Amended Complaint are dismissed with prejudice;
2. To the extent that Claims 1, 2, and 3 assert a cause of action for breach of contract, such claims are dismissed without prejudice;

[13] Defendant further argues that these statutes do not provide private causes of action and that any claims asserted under them must therefore be dismissed (ECF 34 at 19). Defendant is correct on all of these except for the Utah Payment of Wages Act (UPWA). As Plaintiff correctly indicates in his Opposition, the UPWA does provide a private right of action (ECF 38 at 13 (citing Utah Code Ann. § 34-28-9.5)). Although the court's previous Order stated that there was no private right of action under the UPWA (ECF 34 at 13 n.7), effective May 9, 2017, there is a private right of action under the UPWA along with administrative exhaustion requirements. *See* Utah Code Ann. § 34-28-9.5 (West), *see also Graystone Funding Co., LLC v. Network Funding, L.P.*, No. 219CV00383JNPCMR, 2022 WL 1073796, at *5 (D. Utah Apr. 8, 2022) ("an employee who resigns, rather than is terminated, may maintain a UPWA claim for "wages earned and unpaid" that remain unpaid "on the next regular payday," if the claim is for over $10,000). Nevertheless, for the reasons stated above, Plaintiff has failed to state a claim under the UPWA.

3. To the extent that Claim 1 asserts claims under the Wiretap Act, the Stored Communications Act, and the Pen Register and Trace Devices Act are dismissed without prejudice;
4. Plaintiff's FLSA claims contained in Claim 2 occurring prior to September 17, 2021, are dismissed with prejudice;
   a. To the extent that Defendant seeks dismissal of Plaintiff's FLSA claims occurring after September 17, 2021, this request is DENIED. As such, Plaintiff's FLSA claims occurring after September 17, 2021, are not dismissed;
5. To the extent that Claims 3 and 4 assert claims under Title VII and the ADEA, such claims are dismissed with prejudice; and
6. Plaintiff's claims under the UAA; UPWA; Utah Code Ann. § 76-5-106.5; Utah Code Ann. § 76-9-201; Utah Admin Code R610-3; 18 U.S.C. § 2261A; and OSHA are dismissed without prejudice.

IT IS SO ORDERED.

DATED this 28 August 2026.

Cecilia M. Romero

Chief Magistrate Judge Cecilia M. Romero
United States District Court for the District of Utah